UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LASHAN D. HILL,

         Plaintiff,

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.
_____

DECISION & ORDER

17-CV-6532P

## **PRELIMINARY STATEMENT**

    Plaintiff Lashan D. Hill ("Hill") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 16).

    Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and accords with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Hill's motion for judgment on the pleadings is denied.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II. **Parties' Contentions**

Hill contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 10-1). First, she challenges the ALJ's Residual Functional Capacity ("RFC") assessment on the grounds that the ALJ failed to weigh properly the medical opinions of her treating providers, Jeffrey J. Harp ("Harp"), MD, and Maureen Richardson ("Richardson"), NP. (Docket ## 10-1 at 14-16; 15 at 3-4). Next, Hill contends that the ALJ's RFC is not supported by substantial evidence because it is not supported by the opinion of Harbinder Toor ("Toor"), MD – the medical opinion to which the ALJ afforded "significant weight." (Docket ## 10-1 at 16; 15 at 2). Finally, Hill maintains that the ALJ's credibility analysis was flawed. (Docket # 10-1 at 17-21).

The Commissioner maintains that the ALJ properly weighed the medical opinions of record and that substantial evidence supports his conclusions. (Docket # 13-1 at 13-19). The Commissioner further maintains that the ALJ properly evaluated Hill's credibility. (*Id.* at 19-23).

III. **Analysis**

A. **The ALJ's RFC Assessment**

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52

4

(2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d))[1]. Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

---

[1] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

5

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

    (1)    the frequency of examination and length, nature, and extent of the treatment relationship,

    (2)    the evidence in support of the physician's opinion,

    (3)    the consistency of the opinion with the record as a whole,

    (4)    whether the opinion is from a specialist, and

    (5)    whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in his notice of determination or decision for the weight he give[s] [the claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition

of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Between January 2014 and June 2014, Richardson authored two opinions assessing Hill's work-related physical limitations. (Tr. 540-43, 545-48). Generally, Richardson opined that Hill was unable to engage in work-related activity, primarily due to her chronic back and knee pain. (*Id.*). In her January 2014 opinion, Richardson opined that Hill was able walk and sit approximately one to two hours during an eight-hour workday and was unable to push, pull, bend, lift, or carry. (Tr. 543). In June 2014, Richardson opined that Hill was able to walk approximately one to two hours, stand for approximately three hours,[2] and sit for two to four hours during an eight-hour workday. (Tr. 548). She further indicated that Hill was limited to lifting ten pounds. (*Id.*).

Toor conducted a physical examination of Hill on February 21, 2014. (Tr. 376-80). He noted that she complained of back pain that caused difficulty standing, walking, sitting, bending, lifting, or lying down, as well as migraine headaches. (*Id.*). Hill reported that she was able to care for her personal hygiene, cook, clean, do laundry, and grocery shop. (*Id.*). According to Toor, upon examination, Hill was not in acute distress, walked with a normal gait, and was able to walk on her heels and toes without difficulty, although she had difficulty getting out of the chair and did not attempt to squat. (*Id.*). Other than range of motion limitations in Hill's lumbar spine, Toor's physical examination produced essentially normal findings. (*Id.*). He noted full range of motion in Hill's knees and full strength and dexterity in her hands. (*Id.*). Toor opined that Hill had moderate limitations for prolonged standing, walking and sitting, and moderate to severe limitations for bending and lifting. (*Id.*). He also indicated

---

[2] The ALJ read the opinion as reflecting a three-hour standing limitation. Neither party disputes the ALJ's interpretation, although the notation is difficult to decipher.

that pain interfered with Hill's daily routine and that she should avoid exposure to environmental irritants. (*Id.*).

Harp authored opinions regarding Hill's physical limitations in November 2015 and January 2016. (Tr. 556-59, 589-90). The January 2016 opinion was co-signed by Richardson. (*Id.*). In his October 2015 opinion, Harp indicated that Hill suffered from back pain and fatigue, appeared uncomfortable, walked with an antalgic gait, and was unable to heel and toe walk or squat. (Tr. 556-59). According to Harp, Hill was able to walk, stand, sit, push, pull, bend, lift, and carry approximately one to two hours during an eight-hour workday. (*Id.*).

Harp's January 2016 opinion indicated that Hill suffered from high blood pressure, narcolepsy, sleep apnea, osteoarthritis of the thoracic spine, hand arthritis and knee arthritis. (Tr. 589-90). He indicated that she suffered from moderate to severe pain in her back, right knee and right hand, was unable to stand or sit for periods of time, and her chronic hand pain limited her ability to engage in assembly work. (*Id.*). Harp opined that Hill would be absent more than four days a month and would need to take an unscheduled break every two hours. (*Id.*). According to Harp, Hill could sit, stand, and walk less than two hours during an eight-hour workday and could occasionally lift and carry less than ten pounds. (*Id.*).

I conclude that the ALJ provided "good reasons" for his decision to assign limited weight to Harp's and Richardson's opinions. In his decision, the ALJ accorded the opinions "little weight" because the significant limitations assessed by both providers were inconsistent with Hill's treatment records, her self-reports of her daily activities, and the record as a whole. (Tr. 39-42).

Specifically, the ALJ noted that the significant physical limitations assessed by Richardson and Harp were inconsistent with Hill's overall treatment history, which included

8

minimal and fairly conservative treatment. (*Id.*). As the record demonstrates, Hill received sporadic treatment for her back impairment – attending appointments with her primary care providers Richardson and Harp for a few months beginning in August 2013 and then again from August 2015 through December 2015. (Tr. 334-56, 382-411, 565-87). Hill was referred to physical therapy, which she attended between December 2013 and April 2014 (Tr. 364-75, 447-78), and to a pain management clinic which she attended between June 2014 and August 2015 (Tr. 413-45).

The record does not reveal why Hill stopped attending physical therapy, although later treatment notes suggest that she reported that physical therapy was not beneficial. (Tr. 397, 417). The physical therapy treatment notes, by contrast, suggest that therapy did offer some relief. (Tr. 451-52, 457, 467, 469). Further, as noted by the ALJ, Hill voluntarily stopped treatment at the pain management clinic, which the ALJ found inconsistent with Hill's professed symptoms of debilitating pain.[3] (Tr. 42, 445). Evidently, Hill was never referred to an orthopedic or neurological specialist to assess whether she might benefit from surgical intervention. Although Hill disagrees with the ALJ's characterization of her treatment as "conservative" (Docket # 10-1 at 16), the ALJ was within his discretion to assess the nature of Hill's treatment in weighing the medical opinions of record, as well as her credibility. *Robinson v. Comm'r of Soc. Sec.*, 2018 WL 3583236, *6 (W.D.N.Y. 2018) ("[t]he ALJ also did not err in noting that [p]laintiff's treatment was conservative").

---

[3] Hill contends that the ALJ's decision suggests that she stopped pain management due to a decrease in her pain. (Docket # 10-1 at 18). I do not interpret the ALJ's decision to imply that Hill experienced an improvement; rather, the ALJ noted that Hill's decision to voluntarily discontinue pain management treatment was inconsistent with her complaints of ongoing, debilitating pain. Additionally, although Hill apparently reported to Harp that the pain management clinic informed her that there were no further treatments available, the pain management treatment notes reflect that she voluntarily discontinued treatment. (Tr. 383, 445).

9

Further, the ALJ noted that many of the findings and limitations in Harp's and Richardson's opinions were contradicted by the medical record, which demonstrated minimal clinical findings and treatment limited to complaints of back pain. (Tr. 39-42). For instance, Harp's November 2015 opinion indicated that Hill appeared uncomfortable, was unable to heel and toe walk, and walked with an antalgic gait. (Tr. 558). These findings appear at odds with the treatment records that demonstrate that Hill appeared "generally well" during her last visit with Harp and with other medical examinations that noted her gait was normal and she was able to toe and heel walk. (Tr. 378, 418, 423, 428, 440, 445, 504, 571).

The ALJ also observed that both Harp and Richardson assessed that Hill suffered from impairments that were not supported by their treatment notes. (Tr. 39-42). For example, Harp explicitly assessed that Hill suffered from arthritis in her hand that limited her ability to engage in work-related activities, even though his treatment notes contain no references to treatment or complaints for the impairment. (Tr. 589). Similarly, Richardson assessed that Hill suffered from chronic knee pain, even though the treatment notes do not suggest that Hill complained to her or Harp of any symptoms associated with this impairment or received any knee treatment from them. (Tr. 541, 546-47).

Although treatment notes submitted after the ALJ's decision suggest that Hill began to receive knee and hand treatment (Tr. 8-25, 49-147), the record before the ALJ revealed minimal, if any, limitations stemming from these alleged impairments. Although Hill testified during the hearing that she had some pain in her knee and suffered from "tendinitis" in her biceps, she mentioned neither in her application for benefits. (Tr. 159, 163, 292). Similarly, during her examination with Toor, Hill specifically denied suffering from "pain in the biceps muscles or biceps tendinitis," and, although she mentioned having had a knee surgery

10

approximately ten years earlier, she did not complain of any ongoing pain in her knee. (Tr. 376). Indeed, upon examination, Toor found full range of motion in Hill's knees and full strength and dexterity in her arms and hands. (Tr. 378-79). Similarly, although Hill sometimes complained to her pain management physician of back pain that radiated to her knee, she did not report any ongoing chronic knee pain. (Tr. 413-45).

Hill maintains that any inconsistencies relating to these impairments are irrelevant to Hill's ability to perform sedentary work, particularly her ability to perform the sitting, standing, and lifting requirements of such work, and thus do not justify discounting Harp's and Richardson's opinions. (Docket # 10-1 at 15). I disagree. Although Harp's and Richardson's opinions do not make clear the extent to which they assessed limitations relating to Hill's alleged knee or hand impairments, such impairments undoubtedly could affect an individual's ability to sit, stand, walk and lift. Indeed, Hill testified that she suffered from "tendinitis" that limited her ability to lift and carry. (Tr. 163-64). In any event, it is within the ALJ's discretion "to discount a treating physician's [opinion] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (quoting *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005)).

Finally, the ALJ determined that the limitations assessed by Harp and Richardson were contradicted by other evidence in the record, particularly Hill's own statements concerning her ability to perform activities of daily living. The ALJ did not err in this assessment. As the ALJ noted, Harp and Richardson found that Hill's ability to walk, stand, sit, lift, and carry was significantly limited. (Tr. 540-43, 545-48, 556-59, 589-90). The record, however, contains references to Hill's ability to perform activities of daily living unassisted, including caring for

11

her personal hygiene, cooking, performing household chores including cleaning and laundry, and shopping. (Tr. 301, 303-04, 377). In addition, the record contains repeated references to her ability to care for her infant niece and her grandchildren "several days a week." (Tr. 422, 427, 571). While Hill is correct that the frequency and duration for which she engaged in babysitting activities is not entirely clear from the record (Docket # 10-1 at 19-20), the fact that she engaged in such activities at all is at odds with the significant limitations assessed by Harp and Richardson, as well as Hill's complaints of debilitating impairments.

Any suggestion by Hill that the ALJ was not permitted to consider her daily activities in formulating her RFC is incorrect. *See Durante v. Colvin*, 2014 WL 4843684, *2 (D. Conn. 2014) (ALJ properly discussed plaintiff's activities of daily living when formulating RFC; "[w]hile that court's admonition as to the ill wisdom of relying thoughtlessly on evidence of a claimant's ability to manage activities of daily living . . . for the purpose of discrediting evidence of more serious-seeming RFC restrictions in the work context is well-taken, the ALJ does not appear to have erred in this way here"); *Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, *10 (D. Vt. 2014) ("[i]t was proper for the ALJ to consider [plaintiff's] daily activities in determining her RFC"); *Bonville v. Colvin*, 2013 WL 3745882, *5 (N.D.N.Y. 2013) ("[c]ontrary to [plaintiff's] arguments, the ALJ properly considered her activities of daily living . . . , as well as [plaintiff's] testimony that she could work part-time, and evidence that she declared that she was ready, willing, and able to work during the time period for which she claims disability benefits"); *DiMartino v. Astrue*, 2009 WL 1652167, *3 (W.D.N.Y. 2009) ("[t]he ALJ also properly considered [p]laintiff's daily activities – including his part-time employment – in . . . determining his RFC").

The ALJ carefully reviewed Hill's longitudinal medical record and explained at length his determination that the significant limitations assessed by Harp and Richardson were not supported by the objective findings documented in the record or Hill's own statements regarding her abilities. On this record, I conclude that the ALJ did not violate the treating physician rule by according "little" weight to the opinions for the reasons he explained. *See Harrington v. Colvin*, 2015 WL 790756, *16 (W.D.N.Y. 2015) (ALJ properly discounted treating physician opinion where it assessed limitations that were inconsistent with findings contained in the treatment records and with admissions claimant had made concerning his activities of daily living); *Wilferth v. Colvin*, 49 F. Supp. 3d 359, 362 (W.D.N.Y. 2014) (ALJ properly weighed treating physician opinion and "adequately explained her reasons for declining to grant controlling weight to his conclusion" where opinion was "inconsistent with other opinions in the record, as well as statements made by the plaintiff himself, and none of the objective test records . . . indicate[d] a level of disability greater than that reflected in the plaintiff's RFC, as determined by the ALJ"); *Gladle v. Astrue*, 2008 WL 4411655, *5 (N.D.N.Y. 2008) (ALJ properly discounted opinion of treating physician where it was inconsistent with treatment records and objective findings of the consultative examiner).

Hill also argues that the ALJ's RFC assessment is not supported by substantial evidence because it is inconsistent with Toor's opinion, upon which the ALJ purported to rely. (Docket ## 10-1 at 16; 15 at 2). I disagree. As noted above, Toor's physical examination yielded largely normal clinical findings, and he assessed that Hill would have moderate limitations in her ability to engage in prolonged sitting, standing and walking and moderate to severe limitations in her ability to bend and lift. (Tr. 379). These limitations are not inconsistent with a sedentary work limitation. *See Mitchell v. Colvin*, 2017 WL 3188582, *17 (W.D.N.Y.

13

2017) (moderate to severe limitations for lifting and carrying not inconsistent with sedentary work) (collecting cases); *Alianell v. Colvin*, 2016 WL 981864, *13 (W.D.N.Y. 2016) ("[s]ome courts, including this [c]ourt, have held that 'an opinion assessing moderate limitations for sitting, standing and walking is not necessarily inconsistent with a determination that a claimant can perform the requirements of light or medium work,' while other courts have held that 'moderate or severe limitations in prolonged walking are inconsistent with full range light or medium work'") (quoting *Harrington v. Colvin*, 2015 WL 790756 at *14 (collecting cases) (brackets omitted)).

Nor do I find that Toor's opinion that Hill experienced pain that could interfere with her daily routine is inconsistent with the ALJ's conclusion that Hill could engage in the requirements of sedentary work. *See Kinder v. Colvin*, 2014 WL 4184820, *2, 4, 6-7 (W.D.N.Y. 2014) (ALJ's conclusion that plaintiff could perform sedentary work was supported by consultative opinion to which he afforded "significant weight" even though the physician opined that pain interfered with plaintiff's daily routine). As explained above, the ALJ assessed Hill's allegations of debilitating pain at length and determined that the record as a whole, including Toor's opinion, supported the limitations he assessed. I find that the ALJ's determination is supported by substantial evidence, especially considering Hill's own statements regarding her ability to engage in activities of daily living.

B. **The ALJ's Credibility Assessment**

I turn next to Hill's contention that the ALJ's credibility analysis is flawed because he misinterpreted the evidence and failed to properly consider the relevant factors. (Docket # 10-1 at 17-21). For the reasons explained below, Hill's credibility challenge is no more availing than her RFC challenge.

14

An ALJ's credibility assessment should reflect a two-step analysis. *Robins v. Astrue*, 2011 WL 2446371, *4 (E.D.N.Y. 2011). First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *Id.* (citing 20 C.F.R. § 404.1529). Next, the ALJ must evaluate "the intensity, persistence and limiting effects of the symptom, which requires a credibility assessment based on the entire case record." *Id.* (citing 20 C.F.R. § 404.1529(c)). The relevant factors for the ALJ to weigh include:

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate [his] pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of [his] pain or other symptoms; (6) any measures the claimant uses or has used to relieve [his] pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)).

The ALJ concluded that Hill's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the evidence for the reasons explained in this decision." (Tr. 38). In doing so, the ALJ assessed Hill's subjective complaints in the context of the entire record. I disagree with Hill's contention that the ALJ mischaracterized the evidence in reaching his determination.

Hill's credibility challenge largely rests on her disagreement with the ALJ's characterization of the record evidence, including the conservative nature of her treatment, her discontinuance of pain management treatment, and her ability to engage in activities of daily living – particularly babysitting. (Docket # 10-1 at 17-21). She also maintains that the ALJ

15

improperly determined that the treating records failed to support her complaints of ongoing migraine headaches. (*Id.*). None of these contentions warrants remand.

I conclude that the ALJ applied the proper legal standards in analyzing Hill's subjective complaints and that substantial evidence supports the ALJ's determination that Hill's complaints were "not credible" for the reasons he stated. *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job"). As discussed at length above, I do not find that the ALJ mischaracterized the record evidence regarding the conservative nature of Hill's treatment, her ability to engage in activities of daily living including voluntary child-care activities, or her decision to voluntarily discontinue pain management treatment. Nor do I find the fact that Hill continued to be prescribed medication to manage her migraines undercuts the ALJ's findings that the treatment record is devoid of complaints of ongoing migraine pain.

In sum, Hill's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016). Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained,

16

'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)). The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it. *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] ... [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based upon substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED**. Hill's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Hill's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                      *s/Marian W. Payson*
                                      MARIAN W. PAYSON
                                   United States Magistrate Judge

Dated: Rochester, New York
       January 9, 2019